# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TONY G. LANG, *et al.*, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 22-0057-JB-MU |
| | ) |
| WASHINGTON COUNTY, | ) |
| ALABAMA, *et al.*, | ) |
| | ) |
|    Defendants. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss or, in the Alternative, for a More Definite Statement. (Doc. 14). This motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen LR 72(a)(2)(S). Upon consideration of all relevant filings in this case, arguments made at the hearing on this motion, and the applicable law, the undersigned recommends that Defendants' motion to dismiss be **GRANTED, in part,** and **DENIED, in part,** as set forth herein. The Court further recommends that Defendants' alternate motion for a more definite statement be **DENIED.**

## I. FACTUAL ALLEGATIONS[1]

On February 8, 2022, Plaintiffs Tony Gene Lang, Timothy Keith Williams, John Michael Taylor, Edward Walston, Justin Adams, Cameron Adams, Matthew Utsey,

---

[1] For consideration of this motion to dismiss, Plaintiffs' factual allegations have been accepted as true and viewed in the light most favorable to them. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

Michael Patterson, Joshua Diamond, Thomas Lassiter, Joshua Odom, and Benjamin Hoven III, individually and "on behalf of all inmates who have been, are now, or in the future will be imprisoned in the Washington County Jail in Chatom, Alabama," filed their Complaint against Defendants Washington County, Alabama; Brad Johnston, Allen Bailey, William Beasley, Jason Boothe, and Joseph Abston, in their official capacities as Washington County Commissioners; and Richard Stringer, in his official capacity as Sheriff of Washington County, Alabama. (Doc. 1). On March 16, 2022, a First Amended Complaint was filed adding two additional Plaintiffs, Kenneth Turner and Justin McGowen. (Doc. 5). The factual allegations and claims remained the same as those set forth in the original complaint, with only additional facts and claims relating to these two plaintiffs being added. *See id.* Plaintiffs have brought this class action on behalf of all inmates who have been, are now, or in the future will be imprisoned in the Washington County Jail in Chatom, Alabama challenging the alleged inhumane conditions of confinement and treatment that they have suffered and will suffer at the Jail as a result of inadequate medical and mental health care, lack of any system for classifying inmates, lack of exercise, fresh air, or sunlight, exposure to a variety of grave fire hazards, subjection to oppressive and uncivilized levels of sanitation, cooling, heating, and artificial lighting, inadequate security in the Jail, insufficient diet and nutrition, lack of access to legal materials, inaccessible facilities posing barriers to the disabled and infirm, and other serious deficiencies. (*Id.* at pp. 1-2). The named Plaintiffs, individually and on behalf of the putative class, seek declaratory and injunctive relief against Defendants on the grounds that the conditions in the Jail and the treatment of persons confined in the Jail deprive Plaintiffs and the members of the putative class of rights

2

secured to them by the Eighth and Fourteenth Amendments, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act of 1973 (Section 504), as well as rights guaranteed to them under Alabama state law. (*Id.* at p. 2).

Plaintiffs list many conditions at the Jail that they claim violate their own and putative class members' constitutional rights. These allegations range from physical conditions of the Jail itself to allegedly inhumane treatment of inmates to inadequate or non-existent medical care to no access to a law library or legal assistance to vast overcrowding and insufficient staffing. (*Id.* at pp. 13-23). Plaintiffs allege that "[a]ll Defendants are, and have for some time been, aware of the inhumane conditions of confinement and treatment of inmates at the Jail," and that Defendant "Stringer and his staff have been sued frequently on many of the same issues raised in this action." (*Id.* at pp. 23-24). Plaintiffs further allege that "[t]hese conditions and treatment are the product of deliberate indifference on the part of Defendants," and that "[t]he conditions of confinement and Defendants' policies and practices in administering and overseeing the Jail, considered both discretely and in their totality, deprive Plaintiffs and the classes they represent of the minimal civilized measure of life's necessities." (*Id.* at p. 24). Plaintiffs claim that these conditions of confinement violate the Eighth and Fourteenth Amendments, as well as Alabama law. (*Id.* at pp. 24-25, 28-29).

Plaintiffs also allege that Plaintiffs Lang, Williams, Walston, Cameron Adams, Justin Adams, Utsey, Patterson, Hoven, and McGowen and a subclass of "all other individuals with disabilities who have been, now are, or will in the future be incarcerated in the Jail" (the "disability subclass") have been denied important services, programs, and activities solely by reason of their disabilities. (*Id.* at p. 11, 26). Plaintiffs allege that

3

Defendants have not permitted reasonable accommodations for the disabilities of members of the disability subclass and have discriminated against them in the provision of programs and services by prohibiting them, through policies and practices of the Jail, from enjoying the same access to programs and services as inmates who do not have disabilities, in violation of the ADA and Section 504. (*Id.* at p. 27-28).

      Plaintiffs request that the Court order that this case be maintained as a class action, that the Court declare the conditions of confinement and treatment of inmates at the Jail unconstitutional and unlawful, that the Court enter a permanent injunction requiring Defendants, their successors, agents, employees, and all persons acting in concert with them to take immediate steps to improve the conditions of confinement and treatment of inmates held by Defendants in the Washington County Jail and bring such treatment and conditions to a constitutionally adequate level by ordering the removal of all State-ready inmates from the Jail, housing fewer inmates per cell to allow sufficient square footage per inmates, allowing outdoor exercise and recreation, ensuring that the Jail is reasonably fire-safe, improving ventilation, temperature control and lighting, improving sanitation and food service, providing inmates a safe and secure environment, providing adequate medical, dental and mental health care, maintaining an adequate number of properly trained male and female staff for twenty-four (24) hour supervision of the Jail, implementing a classification and health screening system, allowing meaningful access to the courts, supplying inmates with necessary personal hygiene items, and ordering such other changes in policy, procedure and maintenance of the Jail as may be required to eliminate all unlawful and unconstitutional conditions, and award Plaintiffs costs and reasonable attorneys' fees. (*Id.* at p. 29-30).

## II. STANDARD OF REVIEW

Defendants seeks dismissal of Plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that Counts I and IV of Plaintiffs' complaint are due to be dismissed pursuant to Rule 12(b)(1) because this Court lacks subject matter jurisdiction. Subject matter jurisdiction is generally a threshold inquiry that must be established before the Court can proceed to evaluate a plaintiff's claims on the merits. *See, e.g., Douglas v. United States*, 814 F.3d 1268, 1280-81 (11th Cir. 2016) (noting that "[f]ederal courts are courts of limited jurisdiction" and that, if a federal "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). "[T]he party invoking the court's jurisdiction must prove, by a preponderance of the evidence, facts supporting the existence of jurisdiction." *Jory v. United States*, 562 F. App'x 926, 927 (11th Cir. 2014) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.,* 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.,* 323 F.3d 920, 925 n.5 (11th Cir. 2003)). "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint," and when considering a facial challenge, "the court must … take the complaint's allegations as true." *Id.* "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Id.*

Defendants argue that Counts II and III of Plaintiffs' complaint are due to be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be

granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In determining whether a claim is stated, the factual allegations are accepted as true, except for conclusory assertions or a recitation of a cause of action's elements, and the allegations must be considered in the light most favorable to the plaintiff. *See id.; Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997).

In addition, "[a] complaint is subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim,'" *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003)), or "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action,"

*Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. LEGAL ANALYSIS

Defendants seek dismissal on several grounds. First, Defendants assert that this Court lacks subject matter jurisdiction as to certain claims. Specifically, Defendants argue that, because certain Plaintiffs were no longer incarcerated at the Jail at the time the amended complaint was filed, those Plaintiffs claims are due to be dismissed for lack of standing. (Doc. 15 at pp. 4-7). In addition, Defendants argue that this Court does not have jurisdiction over certain claims set forth in Counts I and IV because they are either moot, not ripe, or are an attempt to assert the rights of others. (*Id.* at pp. 7-12). Second, Defendants aver that Counts II (ADA claim) and III (Section 504 claim) are due to be dismissed as to all Plaintiffs except Plaintiff McGowen because they have failed to state a claim under the ADA or Section 504. Finally, Defendants have moved for a more definite statement as to any remaining claims.

**A. Subject Matter Jurisdiction**

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution." *Flast v. Cohen*, 392 U.S. 83, 94 (1968). "[T]he judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" *Id*. "[T]here are 'three strands of justiciability doctrine -- standing, ripeness, and mootness -- that go to the heart of the Article III case or controversy requirement.'" *Christian Coalition of Fla., Inc. v. U.S.*, 662 F.3d 1182, 1189 (11th Cir. 2011) (quoting *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotation marks and alterations omitted)).

Standing is "an essential and unchanging part of the case-or-controversy

7

requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180-81 (2000) (citing *Lujan,* 504 U.S. at 560–61); *see also Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1213–14 (11th Cir. 2019). "Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (quoting *Baker v. Carr,* 369 U.S. 186, 204 (1962)). The "plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy Art. III standing requirements." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005). "The doctrine of mootness provides that the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Tanner Adver. Group, LLC v. Fayette County, Ga,* 451 F.3d 777, 785 (11th Cir. 2006) (*en banc*) (citations and internal quotations omitted); *see also Dunn v. Dunn*, 148 F. Supp. 3d 1329, 1334 (M.D. Ala. 2015) ("The standing inquiry asks whether such a dispute exists at the *beginning* of the litigation, as compared to the mootness inquiry, which asks whether such a dispute *remains* throughout the litigation."). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). Ripeness is

the third part of the justiciability equation. To be ripe, a case must not be "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York,* 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Defendants argue that Counts I and IV are due to be dismissed as to certain Plaintiffs and as to certain claims because of lack of standing, because the claims are moot, and/or because certain claims are not ripe.

Defendants first assert that the claims of Plaintiffs Williams, Taylor, Walston, J. Adams, C. Adams, Utsey, Diamond, Odom, and Hoven are due to be dismissed for lack of standing because those Plaintiffs were no longer incarcerated at the Washington County Jail at the time the amended complaint was filed, although they were incarcerated at the Jail at the time the original complaint was filed. (Doc. 14 at p.1). Relevant to the argument made by Defendants here is the Supreme Court's proclamation that standing "depends on the state of things at the time of the action brought." *Mollan v. Torrance,* 22 U.S. 9 Wheat. 537, 539, 6 L. Ed. 154 (1824). Defendants rely on the Court's decision in *Rockwell International Corp. v. United States*, 549 U.S. 457, 473-74 (2007), in which the Supreme Court found that the relator's status at the time of the *amended* complaint determined whether the lower court had jurisdiction, in support of their argument that these Plaintiffs lack standing; however, the Court finds that decision distinguishable and inapposite to the issue presented in this case. In *Rockwell*, the plaintiff relator *changed* his allegations in the amended complaint, while in this case, the amended complaint added two plaintiffs but did not alter the allegations or claims of the original plaintiffs in the original complaint.

Here, an examination of the Federal Rules of Civil Procedure is insightful. Rule

15(c)(1) states that "[a]n amendment to a pleading relates back to the date of the original pleading when: … (B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading…." The amendment to the original complaint only added two new plaintiffs and their claims arose out of the conduct and occurrences set forth in the original complaint. Therefore, pursuant to Rule 15(c)(1), the amendment to the complaint in this case relates back to the date of the original complaint. *See Focus on the Family v. Pinellas Suncoast Transit Authority,* 344 F.3d 1263, 1275 (11th Cir. 2003) (finding that Plaintiff had standing because the amended complaint related back to the original complaint, pursuant to Fed. R. Civ. P. 15(c), because the amended complaint contained the same allegations as the original complaint). The Court thus finds that, so long as a particular plaintiff was incarcerated at the Jail at the time that the original complaint was filed, the standing element of the subject matter jurisdiction inquiry has been met in this regard. In this case, the challenged Plaintiffs were incarcerated at the Jail at the time the original complaint was filed; therefore, they have standing to present their claims.

Defendants also argue that certain claims must be dismissed because those particular claims are not justiciable. Defendants' argument is somewhat vague; however, the Court will address the three allegations specified in Defendants' brief. The first allegation challenged by Defendants is Plaintiffs' claim that state inmates being held at the Jail for lengthy periods of time and commingled with pretrial detainees causes or exacerbates the inhumane conditions at the Jail. (Doc. 5 at pp. 13-14). Defendants argue that this claim has been mooted by a state court law, effective January 1, 2021,

which provides that the sheriff shall transfer physical custody of state inmates to the Department of Corrections within 30 days of receiving the sentencing transcript. The mere presence of this law, however, is not enough to defeat Plaintiffs' claims at this stage because there is no evidence that the Jail is properly following this provision and that state inmates are no longer being held at the Jail for excessive periods. At this stage of the litigation, the Court must take the allegations of Plaintiffs as true; therefore, the Court finds that this argument is premature.

The second allegation that Defendants maintain is not justiciable is Plaintiffs' claim that inmates and others in the Jail confront a variety of grave fire hazards. Specifically, Plaintiffs allege:

> There are no policies or procedures to respond to a fire or other emergencies, no drills or instructions. There is normally only one jailer on duty in the Jail, and even then, jailers are not present and do not patrol the sections of the Jail occupied by the inmates. For many hours every day, supervision of the Jail is delegated to inmate Trustees. There is no two-way communication system or other effective means by which inmates can notify the staff of a fire or other emergency. Neither Jail staff nor prisoners or trustees have been instructed on procedures to follow in the event of a fire. Because each side has a door that must be manually unlocked, the lone jailer would not have time to safely evacuate the prisoners if a fire occurred. There are no manual fire alarms or emergency lights. There is only one exit from the living areas of the Jail, and it is extremely distant from some of the cells. There are too few, if any, working smoke detectors, fire extinguishers, and artificial breathing devices. There is no sprinkler system. The actual fire escape has been welded shut.

(Doc. 5 at pp. 16-17). Defendants assert that these allegations are purely speculative and based entirely on assumptions of possible future harm because no inmate has been injured by a fire and, therefore, this claim is not ripe. First, the Court notes that

these allegations are not a claim *per se* as they were set forth in the portion of the complaint entitled "Factual Allegations." (*Id.*). These factual allegations were set forth in support of Plaintiffs' claim that they were and are subjected to unconstitutional conditions of confinement while incarcerated at the Jail. (*Id.* at p. 24).

Plaintiffs aver that the conditions of confinement to which they were, are, and will be subjected violate their Eighth and Fourteenth Amendment rights. Their claims in this regard are brought pursuant to § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1994). Because Plaintiffs were pretrial detainees at the time the acts giving rise to this claim occurred, their claim sounds properly in the Fourteenth Amendment right to due process rather than in the Eight Amendment. *See Taylor v. Adams*, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000); *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995); *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985). Nevertheless, their claim of unconstitutional conditions of confinement is analyzed the same whether it arises under the Due Process Clause of the Fourteenth Amendment or under the Eighth Amendment. *Id*. Accordingly, the Court can rely upon both Eighth Amendment and Fourteenth Amendment cases in ruling upon this motion.

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the Supreme Court reiterated a state's constitutional responsibilities to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.... The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and **reasonable safety** -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

489 U.S. at 199-200 (citing *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) ("When a person is institutionalized -- and wholly dependent on the state[,] … a duty to provide certain services and care does exist.") (alterations in original)) (emphasis added).

Although Defendants argue that this claim is not ripe because no Plaintiff has been injured by fire, the Eighth Amendment protects against future harm to inmates. *See Helling v. McKinney,* 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition."). In *Helling,* the Supreme Court explained:

> The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is reasonable safety. It is cruel and unusual punishment to hold convicted criminals in unsafe conditions. **It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.** The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event.... *Gates v. Collier*, [501 F.2d 1291 (5th Cir. 1974)],[2] held that inmates were entitled to relief under the Eighth Amendment when they proved threats to personal safety from exposed electrical wiring, deficient firefighting measures, and the mingling of inmates with serious contagious diseases with other prison

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit held that cases decided by the former Fifth Circuit prior to October 1, 1981 are binding precedent.

13

inmates.

*Id.* at 33-34 (internal quotation marks and citations omitted). In *Gates*, a Fifth Circuit case in which the lack of fire protection equipment was one of the allegations of unconstitutional conditions of confinement, the Court reiterated that "the adequacy of conditions of confinement of prisons -- such as medical treatment, hygienic materials, and physical facilities -- is clearly subject to Eighth Amendment scrutiny." 501 F.2d at 1302. Likewise, in *Hoptowit v. Spellman,* 753 F.2d 779, 783-84 (9th Cir. 1985), in affirming the District Court's conclusion that substandard fire prevention at the penitentiary endangered inmates' lives and therefore violated the Eighth Amendment, the Court held that "[p]risoners have the right not to be subjected to the unreasonable threat of injury or death by fire and need not wait until actual casualties occur in order to obtain relief from such conditions." *Id*. (citing *Leeds v. Watson*, 630 F.2d 674, 675-76 (9th Cir. 1980)).

Plaintiffs here have claimed essentially the same allegations as those set forth in these cases regarding the dangers existing from alleged inadequate fire protection. The Court agrees that those allegations support an Eighth Amendment conditions of confinement claim and finds that those claims, if proven, would be ripe for consideration of injunctive relief.

The third argument made by Defendants is that the allegations set forth by Plaintiffs as support for their Eighth Amendment claims are not specific as to which Plaintiffs and to which Defendants they apply. They argue that Plaintiffs' claims appear to be a general request for extensive regulation of the Jail by the Court. While at the end of the day Defendants' arguments may bear weight, at this stage, Plaintiffs' complaint

puts the Court and Defendants on notice of their claims and the factual allegations that support the claim. Discovery will reveal whether those claims hold weight. The Court finds that the claims set forth by Plaintiffs are typical condition of confinement claims over which many federal courts have maintained jurisdiction. Therefore, the Court finds that Defendants' argument that the Court lacks jurisdiction over these claims because they are not well-plead is not well founded.

The final jurisdictional analysis that is required in this case is whether the claims of certain Plaintiffs have been mooted by their release from the Jail. As discussed above, a case becomes moot if the requisite personal interest that exists at the commencement of the litigation ceases to exist. *See Lujan,* 504 U.S. 555, 559-60 (1992)*.* "[A] case must be dismissed as moot if events that occur subsequent to the filing of a lawsuit deprive the court of the ability to give the plaintiff meaningful relief." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020). "The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen,* 502 F.3d 1255, 1266 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas,* 563 U.S. 277 (2011)).

As discussed above, many of the Plaintiffs in this case, for whom only injunctive and declaratory relief is sought, have been transferred from or released from the Jail since the filing of their complaint. If Plaintiffs had brought this action as individual claims, the suit would clearly be moot as to those Plaintiffs who have been released from the Jail. However, Plaintiffs did not bring this action solely as individuals; rather, they also brought this action on behalf of a putative class. Therefore, this action requires a further

analysis.

"One exception to the mootness doctrine arising in the class-action context is the inherently transitory exception." *Motley v. Taylor*, No. 2:19-CV-487-WKW, 2021 WL 2556152, at *4 (M.D. Ala. June 22, 2021). This Court finds the discussion of this issue by the *Motley* court instructive here. As recognized by the Supreme Court, "where a named plaintiff's claim is 'inherently transitory,' and becomes moot prior to certification, a motion for certification may 'relate back' to the filing of the complaint." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 n.2 (2013). This exception "was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." *Id*. at 76. This exception to the mootness doctrine in the case of pretrial detainees, particularly when the continuing existence of a class of persons suffering the same alleged constitutional deprivations is certain, has long been recognized by the Supreme Court due to the unlikeliness of any given individual named as a plaintiff being in pretrial custody long enough for the court to certify the class. *See Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 51-52 (1991); *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 399 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 110 (1975).

"Lower 'courts have distilled from *Gerstein* two requirements for the "inherently transitory" exception to apply: (1) that the injury be so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and (2) that it is certain other class members are suffering the injury.'" *Motley,* 2021 WL 2556152, at *6 (quoting *Wilson v. Gordon,* 822 F.3d 934, 945 (6th Cir. 2016)). Regarding

the first requirement, the Supreme Court noted in *Gerstein* that "[p]retrial detention is by nature temporary.… and [i]t is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." 420 U.S. at 110, n.11. The fact that many of the named plaintiffs in this case have been released or transferred from the Jail since the filing of the complaint further supports the first requirement. As to the second, Plaintiffs have alleged that putative class members continue to suffer the constitutional violations set forth in their complaint and Defendants have not presented evidence to the contrary. Accordingly, the Court finds that the inherently transitory exception applies to the claims set forth in this action.

Based on this authority and reasoning, the Court finds that subject matter jurisdiction exists at this time over the putative class action filed by Plaintiffs. Accordingly, the Court recommends that Defendants' motion to dismiss Counts I and IV for lack of subject matter jurisdiction be **DENIED.**

B.  **Claims Under the ADA and Section 504**

Defendants aver that Counts II (ADA claim) and III (Section 504 claim) are due to be dismissed as to all Plaintiffs except Plaintiff McGowen because those Plaintiffs have failed to state a claim under the ADA or Section 504. Plaintiffs have conceded that Plaintiff McGowen is the only plaintiff who pled a viable claim under the ADA and/or Section 504. Accordingly, the Court recommends that Defendants' motion to dismiss Counts II and III as to Plaintiffs Lang, Williams, Walston, J. Adams, C. Adams, Utsey, Patterson, and Hoven be granted and that those Plaintiffs' ADA and Section 504 claims be dismissed.

**C. <u>Motion for More Definite Statement</u>**

Defendants argue that Plaintiffs' complaint is a shotgun pleading and request that the Court order Plaintiffs to file a more definite statement. The Eleventh Circuit has identified four main types of shotgun pleadings. *See Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1321-23 (11th Cir. 2015). This Court finds the Eleventh Circuit's recent analysis of these types of pleadings relevant here:

> *First*, the most common type is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. *Second*, the next most common type is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. *Third* is a complaint that does not separate[e] into a different count each cause of action or claim for relief. And *fourth*, we've described the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. **The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.** Dismissal on shotgun-pleading grounds is appropriate when "it is **virtually impossible** to know which allegations of fact are intended to support which claim(s) for relief. Here, [Plaintiff's] amended complaint lacks the defining feature of shotgun pleadings, as it is not "virtually impossible" to discern which factual allegations support each of [Plaintiff's] claims. To be sure, the complaint is certainly long and may not be a paragon of clarity. But that did not prevent the district court or the … defendants from understanding the basis of [Plaintiff's] core … claims…. And in our view, the allegations don't make it "virtually impossible" to identify the facts supporting each count…. In short, while the amended complaint may display some of the characteristics of what we have described as shotgun pleadings, we do not think

18

> the complaint fails to give the defendants adequate notice of
> the claims against them and the grounds upon which each
> claim rests.

*Inform Inc. v. Google LLC,* No. 21-13289, 2022 WL 3703958, at *4-5 (11th Cir. Aug. 26, 2022) (*per curiam*) (internal quotation marks and citations omitted) (emphasis added). Rule 12(e) also supports this conclusion: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P 12(e).

While the complaint here is lengthy and perhaps not a "paragon of clarity," there is no doubt that it gives Defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Inform Inc.,* 2022 WL 3703958, at *4. Because the pleading is not so vague and ambiguous that Defendants cannot reasonably prepare a response, the Court recommends that Defendants' motion for a more definite statement be **DENIED.**

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** as follows:

1) that Defendants' motion to dismiss Counts I and IV of Plaintiffs' complaint for lack of subject matter jurisdiction be **DENIED;**

2) that Defendants' motion to dismiss Counts II and III as to Plaintiffs Lang, Williams, Walston, J. Adams, C. Adams, Utsey, Patterson, and Hoven be **GRANTED** and that those Plaintiffs' ADA and Section 504 claims be **DISMISSED;**

3) that Defendants' motion to dismiss Counts II and III as to Plaintiff McGowen be **DENIED;** and

4) that Defendants' motion for a more definite statement be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the **30th** day of **September, 2022**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**